Our next case for argument today is 22-1753, Miller Mendel v. City of Anna, Texas. Mr. Vylander, whenever you're ready. Yes, Your Honors, thank you. May it please the Court. The last time I was in front of this Court was in 2008 in the Stadium courtroom in D.C. We're going to be addressing two issues on our appeal. One is a very tough and very intellectually interesting issue, which the Court is well aware of. And the other is a very straightforward, unremarkable issue. The question is, where would we be here today? Where would we be today if the lower court had followed Rule 12d? We would not be here. The Fifth Circuit reads 12d just as plainly as it said, which is if... Let's just say I agree with you. Okay. Okay, I know where you're going to go. Your problem is that the judge in this case actually stated that he would reach the same conclusion and result both when it does and when it does not consider declarations or exhibits. So the problem you have is this judge reached in the alternative a conclusion where he excluded all of the declarations and exhibits, and therefore, why isn't it at most harmless error for him to have decided the case without giving you an opportunity to cross-examine or present evidence? Because in the Fifth Circuit, Your Honor, and in 12d, that is not an option the Court has. It either excludes it or it goes under Rule 56. It did not do either. That is not a discretion that the rules or the Fifth Circuit gives this Court. What? Do you have a case that says that? Because why wouldn't it just be under 12c? Your Honor, in the St. Paul insurance case versus a fee of worldwide... Do you understand what I'm saying about 12c, though? Why wouldn't it just, I mean, couldn't it be under 12c? Your Honor, I certainly understand the question, which is, okay, why can't we just disregard the affidavit entirely and then just proceed forward as if that affidavit had never been presented? There's two issues with that. One, again, that is not what the rule allows. The rule says you either exclude it or you pursue it under Rule 56, and the Fifth Circuit treats it the exact same way. That is the rule. The second thing is, obviously, the Court did not consider it in the alternative because the Court took information from that affidavit and put it in its order. So, obviously, that was important to the Court. Only in the background. The Court only mentioned the information, unless I'm mistaken, and please correct me if I am, but the information from that declaration in the background section, not at all in the analysis section, which resolves the dispute between the parties. Your Honor, I believe that that was mentioned. Show me where, then, please. I believe it was in 16, which may have been discussing the claims in the discussion section, Your Honor, at Joint Appendix, page 16. Where are you on page 16? I'm in the very first paragraph where it actually quotes and addresses the stuff from the city. And that's in the discussion section. And to go further to your point, Your Honor, without that affidavit, there's actually nothing in the record from which a court could find that the patent was invalid, under Alice, Step 1 or Step 2. Why? Hmm? Why? I mean, you know, what if, regardless of whether something's conventional or not or whether it's been done before, I mean, it's a situation of do it on a computer and, therefore, it's an abstract idea? Well, Your Honor, Appellant does not believe abstract idea means that. Why do you need to have declarations to prove that a claim is directed to an abstract idea under Section 101 of the Patent Code anyway? Well, Your Honor, we didn't put a declaration in because we felt we needed it under 12C. But we would have put one in if we were going under Rule 56 because they had put in a declaration. And we would have put in a declaration saying, this was not well understood, routine, and conventional to a skilled artist. Just responding to your comment, I think you said that there was nothing in the record that the judge could have relied on to find that the claims were directed to an abstract idea without those declarations. Oh, of course. And Alice said, why do you need to have declarations to make a determination, which is a legal determination, I think, as to whether claims are directed to an abstract idea? Very good question, Your Honor. And the answer to that in Appellant's position is because Alice, Step 1, is very difficult to apply. And, frankly, it's confusing. And I don't believe I'm, as my opposing counsel suggested, engaging in litigation misconduct by pointing out to this court what I think every member of the court has said at some point or the other, that this needs to be resolved. The question is, how do you formulate it? But you agree that we're obviously bound by Alice, right? Yes, I understand that. And I'm not suggesting it be overruled, Your Honor. What I am suggesting is the one thing this court can do is it can flesh out Alice, Step 1. Right now, Alice, Step 2, under the Berkheimer decision, seems very well flexed out. Patent attorneys, patent litigators such as myself, we can use Alice, Step 2, the Berkheimer standard. We can work with that. That's something we can consult our clients on, make decisions on. Alice, Step 1 does not afford that opportunity. We have a lot of students in the courtroom today. And so I was wondering if you could tell them generally what your claim is directed to. This is a patent case, and the question is whether your client would be eligible for a patent. Yes, Your Honor. The Supreme Court has announced in recent years that there are certain inventions, named inventions that will not be eligible for a patent. Well, Your Honor, this invention is directed as claimed in Claim 1 to a not only just automation of the background investigation process, but the additional feature of taking that application and generating reference lists which were not available and was not done prior to this invention. Okay. So it's directed to assist a memory, to assist an investigator in conducting a background investigation. And thank you for that description. With the additional feature, as I indicated, Your Honor. Had I had the opportunity to put anything in evidence, I would have put exhibits I have from law enforcement officers saying we could not do this before. I would have put that in the record. But to your question, Judge. Oh, sorry. I want to make sure a question gets answered first. To your question, why might you need a declaration under Alice Step 1, perhaps you don't need it in every case. But I think when a factual issue is raised for Alice Step 1, as in what is this directed to, or more importantly, whether it's an abstract idea, because one of the questions that comes up when you talk about whether it's an abstract idea or not, which is an undefined term, is can this be done by hand? Well, that's certainly a factual question. Now, the opposing counsel and the judge, based on nothing in the record that I can see, says this is no different than finding something on a map. Can I circle back on a point you made before? Yes, Judge. And you started to get to a case. I want to make sure I have all of my information down here appropriately. When you were talking with Chief Judge Moore about, for example, I think it's Appendix 28, footnote 4, and she was talking about the fact that the court had made clear that it would reach the same conclusion with or without the declarations or exhibits. And then you guys had a conversation about, at most, harmless error. You seem to be implying that you didn't think a harmless error analysis would be applicable here. Can you expand on that? Is that what you were saying, or maybe I misheard your argument? That is not exactly what I'm saying, Your Honor. I'm not suggesting you misheard me. Perhaps I'm not as articulate as I think I am. In the Fifth Circuit, once matters outside the pleadings are presented and not excluded, it automatically becomes a Rule 56 matter. Automatically, not maybe it does, automatically. Now, are there decisions that says, well, if it doesn't really matter in the long run, it's harmless. But it does matter in the long run because if we're under Rule 56, which is automatic in the Fifth Circuit, then the denial of the opportunity to present evidence is prejudicial and it's harmful. And as I said, we would have put declarations in on these subjects. And to your point, Judge, we would have put a declaration on that point that it cannot be done by hand. So is it your view that the—of course, whether something can be done by hand isn't the only test for whether something's abstract. We have a lot of cases out there that flesh out what an abstract idea is. But my question for you is, is it your view that under Fifth Circuit law, the district or judge can't say, well, I'm going to decide this under 12C and ignore the declarations that were presented? No, absolutely. I do not believe they can do that. The case in St. Paul v. Bellaire says once matters outside the proceeding are presented, it necessarily becomes a summary judgment proceeding. In that case, did the judge rely on those submissions? There are so many cases, Judge, I'll have to go back. I think they did. I think that makes a difference. The court did. The lower court didn't rely on it. It was a statement of insurance. I recall the case now. It was a statement for—and the court may have not thought it was relying on additional evidence, but it was, in fact, and the court said, okay, no, this is under Rule 56 now. And why doesn't that difference in facts in that case, where the district court actually chose to rely on the additional evidence presented, why isn't that case inapplicable to this case where the judge said, alternatively, I'm not even going to consider those declarations because they don't impact my analysis? Well, again, Your Honor, I'll say that the court may have said that, but in its actual analysis, it did not exclude that evidence. It actually used that evidence. But that was an alternative. You don't agree that it was an alternative analysis? Because, Your Honor, they didn't provide an alternative analysis. There was no analysis for this court to look at in the alternative. They only provided the analysis that included that. Counsel, you're relying on a case, and you call it, I think, St. Paul versus, is it Bel-Air? I tried to write that down. Yes, Bel-Air, Texas. You don't cite it in any of your briefs before this court. And what troubles me about that is, you know, we have a mechanism. If you find a case later in the process that's important, that you think the court should be prepared to speak to or understand or discuss, are you going to tell me on page 13? I'm going to tell you that it was cited on page 13. That's called St. Paul versus AFIA Worldwide Insurance. That's why I just asked you whether or not you're referring to some case called St. Paul versus Bel-Air. No, no, Your Honor. Perhaps I just spoke at St. Paul Insurance Company of Bel-Air, Texas versus AFIA Worldwide Insurance. Okay. Now, on page 13, please note that all you mention is the district court is confined to the pleading, and you actually cite Great Plains and then hit a parenthetical saying citing St. Paul. So to suggest that you really didn't rely on this case would kind of be an understatement. And now you're standing here and you've cited it back to us three times. How was I supposed to understand from your briefs that this is, in fact, the critical case that definitively comes out in your favor or should cause me to come out in your favor? Because I'll be honest. I've got a whole bunch of cases here that have been culled from your briefs about what's important, and that's not one of the ones I have here. And perhaps it's because it was only in a tiny parenthetical citing St. Paul and never mentioned in your reply or anywhere else in the blue brief. So it would really help the court if you have a case that you think is really strong on your point, that you brief it and you didn't hear it. So I'm, quite frankly, with all due respect, at a loss. I don't know how Judge Stoll could talk to you about what the facts of that case were because I didn't know them, I mean, because I don't know how I would have known them because they're not anywhere in your brief. Well, Your Honor, we did cite a number of Fifth Circuit cases, including the Villarreal case, which, of course, is a district court opinion, but the court there did exactly what you're supposed to do under Rule 12d. Once it was presented with matters outside the pleadings, it said, okay, I'm going to exclude this, I'm going to treat this under Rule 56, and that properties are given an opportunity to present their materials. One other question I want to at least pose to you is about, you were talking a little bit about step two of the allocation agreement. Yes, yes. And I want to know what specific sort of factual findings do you contend that the district court needed to make here? Because it seems like you were contending that there was some type of factual dispute there that really needed to be addressed that wasn't properly addressed by the district court. Well, Your Honor, there's two parts to that. One, the district court didn't actually use the correct Berkheimer standard. The district court cited Berkheimer and Natrix for the idea that to be an inventive concept, it has to be something that was not well understood, routine and conventional, period. The court didn't add the important part, which is what patent attorneys poke their head up at, which is to a skilled artisan at the time in the relevant field. The court didn't mention the skilled artisan at all. The court didn't mention the time of the patent at all, which was the priority date of 2011. Those were not mentioned by the district court, nor did the district court tie any findings to the skilled artisan or to the time of the invention. And in fact, when asked on reconsideration to make such determinations, at the very least under Rule 54 for ease of appellate review, the district court declined to do so. So there are no findings about what is well understood, routine and conventional, to a skilled artisan at the time of the invention. It's absolutely devoid of that. All right, counsel. Why don't we save a little bit of time for you because there is a cross-appeal, and I want to make sure you have a chance on rebuttal to address that. So I'll restore some of your rebuttal time. Thank you, Your Honors. Is it Mr. Talley? Am I saying that right? Yes, Your Honor. Mr. Talley, please proceed. Good afternoon, Your Honors. My name is Evan Talley. I'm here on behalf of the appellee, cross-appellant, City of Anna, Texas, in this case. As Your Honor mentioned, we are, there is a cross-appeal at issue here as well, and I'll be addressing several issues today. So do you agree that the judge below erred under 12D by allowing in the declarations without giving opposing counsel an opportunity to put in their own declarations? I don't believe that the judge erred, Your Honor. So you believe it was error if what he did is what I just said, which is allow in declarations that he used, let's say. You can tell me that's not what the facts of this case are, but accept my hypothetical. Allow in declarations which he used in assessing this case under 12D without giving them an opportunity to present any contrary affidavits or declaration. Would that be an error? I do agree with you. If the judge explicitly relied on the declaration, it would be an error. Okay. I do, and I want, that was going to be my first point, to address that the Villarreal case that Mr. Rylander cited near the end of his argument, a 2010 district court case, cites to a case called Fernandez-Montes v. Allied Pilots Association, which is a Fifth Circuit case from 1993 and cited in Apelli's brief. This stands for that exact proposition, that only if the judge explicitly relied on the outside evidence was it improper. Well, can you talk to me about appendix page 28, footnote 4? Because I was thinking that was very helpful to maybe your side of the argument, and what I'm expecting you to argue with respect to 12C. Absolutely, Your Honor. Footnote at the bottom of page 28, where Judge Gillestraff says that he would have reached the same conclusion and result both when it does and does not consider the declarations and exhibits attached to the city's motion. That's one mention of it, and absolutely that is the crux of our argument, because the judge made clear that although obviously the declaration was submitted and it is cited in the district court order, he did not rely on it in making that decision. He completely disregarded it and reached the same conclusion. Similar language, because this is the order on the motion for reconsideration that appellants filed after the order in validating the patent came down, but there's similar language at appendix 16 and 17 of the order on the invalidation order, what I would call the original order in validating the 188 patent. It's footnote 4 again there. It says, Miller-Mendel also argues that the city's motions go well beyond the pleadings allowed under Rule 12C. The city contends that the court can determine that the 188 patent is directed to ineligible subject matter without reference to any of the declarations or exhibits attached to its motion. What was your response to opposing counsel's argument when he was having a discussion with Chief Judge Moore that there was some reliance on those declarations, almost implying that this footnote is somehow inaccurate? There is citation to the declaration, and I think there is a discussion of the material that was included, but it all comes to expand upon what was in the 188 patent. And I want to go back to another site that stands for the same proposition, the appendix. It's at appendix page 30. And this, again, is in the order on denying appellant's motion for reconsideration. It says the court did not rely on evidence outside of the 188 patent to find it was directed to an abstract idea because the language intrinsic to the 188 patent itself demands such a conclusion. So I agree. That's on page 30. There's no doubt that Judge Gilstrap made it clear that he was not relying on any evidence outside 188 on the abstract idea, but that's prong one of a two-part test. And what your opposing counsel pointed us to is on page 16, where there is some reliance or reference to that evidence, and page 14 is the header for this section, and that is the claims of the 188 patent do not recite any invented concept. Now, I think, unless I'm mistaken, that that's Alice prong two, not prong one. So later in the opinion, he says, I didn't look at outside evidence for prong one. Done. Agree. We're there. But here, for prong two, he seems to be mentioning the outside evidence. Is there any statement in this opinion that would suggest he didn't rely on that evidence and the concept of deciding prong two of this test? There is not a statement directly regarding prong two, not explicitly saying it was not considered. But it also is not saying explicitly that it was only considered for prong one. There is an analysis under prong two that the idea of generating a list or a reference list, as Mr. Reitlander described the invention of the or the inventive concept of the 188 patent, that that is not well understood, routine, and conventional. The skill survey case were relied upon, and British Telecom were relied upon to come to that conclusion, completely outside the Bittinger Declaration. Okay. I'm confused. What was relied upon to come to the conclusion? It's not that it is conventional. I think you said not conventional. I think you mean is conventional. Well, sorry, that the idea is well understood, routine, and conventional. Sorry for misspeaking there. Can I ask you, what is, could you describe, because we've got a lot of students and people here, what, in your view, is the claim limitation for generating the reference list? What is that? Just describe it in my own words or describe it as the patent states? As the patent states. So the idea is that the method claim will perform certain steps, exchange of information between a job applicant and a background investigator to compile information, references, say, addresses where they've lived. And then at the end of that process, it takes the addresses and it generates a list of law enforcement agencies in an area based on the addresses in the application. That is what is described as the inventive concept. And so the dispute here for an inventive concept, because we review these things to know what could be twofold, it could be a question of whether it's well understood, conventional, routine, but it also could be whether that itself is an abstract idea. Sure, and there's always been kind of some conflation of what occurs at step one, determining whether something is an abstract idea, but that some of the same analysis goes into step two as well. What I was suggesting was that the Supreme Court has a number of decisions where they've said, hey, an invention can be amazing, it can be new, but if nonetheless it's directed to an ineligible subject matter, which an abstract idea is, then that can't be the inventive step that makes the claim eligible for intersectionality. Absolutely, and I do think that the claim to invention is the abstract idea. If I wanted to, on pen and paper, I could go out and generate a list. I could get on a map, I could take an address of a job applicant, I could go pull an atlas or a collection of maps that may have the Atlanta PD on it, and I say, well, this is within 15 miles, because in practice that's what these programs are doing, and that's what appellants claim that the ACUE software reads on, is the ability to do that. It makes it quicker, it makes it more efficient to do it through an automated process, but that's exactly what 101 is designed to defend against. Okay, do you want to address your cross-appeal? Absolutely, Your Honor. There's two issues on cross-appeal here today, the first of which is that the district court found that it did not have jurisdiction at the time it issued its invalidation order on Claim 9 of the 188 patent. We believe that the district court erred there. The totality of the circumstances at the time the motion for judgment on the pleadings was filed leads to the conclusion that all independent claims of the 188 patent were asserted. Can you confirm whether there was just an affirmative defense or also counterclaims of invalidity? Can you just answer that aspect? There was an affirmative defense for invalidity of the entirety of the 188 patent. There was no counterclaim to do so. So if there's no counterclaim, you've got a complaint that says claims, then you have infringement contentions just two weeks later that identify specifically only 1, 5, and 15, and you only filed an affirmative defense, not a counterclaim, what makes it error for the court to have concluded that Claim 9, a different claim upon which no infringement contentions were filed, is now suddenly somehow part of the case or controversy? The standard is that the court should look at the totality of the circumstances. What did I just miss? I just gave you all the circumstances. What you missed are some materials that were submitted with the briefings in the Eastern District of Texas case that were also submitted in a companion Western District of Oklahoma case. Those are not this case? It's not this case, but the parties have taken materials from that case to inform the allegations regarding the 188 patent. I don't understand. The fact that he may have sued or they may have sued somebody else on Claim 9 in a different court, how does that have any bearing on what's at issue in your case? Because it is the same plaintiff, the same patent, and an indemnity of this common indemnitator, Guardian Alliance Technologies, in the case. Why didn't you just have your infringement contentions cover Claim 9? Well, it was appellant who submitted infringement contentions. Apologies. No worries. And that was two weeks after we filed the motion for judgment on the pleadings. Let me ask a better question. I'm going to give you a better one. Sure. Why do you have a counterclaim? Yes. Great question, Your Honor. That's like a sentence in your answer. It's like maybe two sentences. Sure. Really not hard to do. Sure. We have the affirmative defense for all claims, right? For the declaratory judgment of invalidity of Claim 9 of the 188 patent, that's a whole other cause of action. And in another companion case, there is a counterclaim on that. So you knew how to do it? Why didn't you do it here? We knew how to do it, and we do regret not doing it. That would have made clear. We can't save you from yourself. Sure. Understood. If you are in a situation where you have an affirmance of Judge Gilstrap's decision on Claims 1, 5, and 15, what will you do then? You'll take it to the other court where Claim 9 is pending and resolve that issue that way, right? I think that that's to be sorted out because of all the different cases involving this. The case where there is a counterclaim on invalidity is a case in the Eastern District of California that's currently staying pending disappeal. But also that claim is being asserted. Is there a case where Claim 9 is being asserted? The Western District of Oklahoma is currently being asserted, and that case is also staying as well. This court does have the jurisdiction to find that Claim 1 is representative of Claim 9 as well. How in the world can we find that? Why do we have jurisdiction if the district court didn't have jurisdiction? Well, you have to know about a review of the invalidation order. And so you think we can go beyond it and just invalidate any claim we want? Maybe with instructions to the district court. Judge Gilstrap held that there was no police controversy in this case with respect to Claim 9. If we agree with that, how are we supposed to touch Claim 9? I guess you can, Your Honors. Do you want to talk about fees as well? Sure, absolutely. Our position in this case, and this is related to all of the other cases that have been filed against Guardian Alliance Technologies clients, and the lead up and the protracted litigation history coming into when the 188 patent was invalidated in the Eastern District of Texas. Octane Fitness kind of changed the standard for attorney's fees under 285 to more totality of the circumstances with two prongs. The litigation position of the plaintiff or of the party and also the manner in which the litigation was conducted. We think the district court erred or used its discretion in misapplying that standard. If both elements of that are not present under AstraZeneca, then there can be no, we cannot find an exceptional case under 285. You're using a lot of words, but make this simple for me. Sure. What did they do wrong, so wrong, to make this case exceptional that should result in you getting your attorney's fees? Was it the fact that they contested 101 under Alice? Is that the argument that you're going to rely on? Or did they behave badly in litigation? Tell me specifically what they did so wrong that I should overturn on a clear error standard a determination that this case was not exceptional by a district court judge that's probably seen a thousand of these cases? This is not a friendly question. Please continue. Understood. And I picked that up. There are multiple different things that we think make this case exceptional. Obviously, I've alluded to the multiple other proceedings. We were litigating in the Western District of Oklahoma. So that's litigation conduct. So you're focusing not on specific arguments made in this case that you think are so weak that you're entitled to attorney's fees, but rather an overall pattern of litigation. Is that, give me your best one. We think at the time that plaintiff initiated this lawsuit in the Eastern District of Texas, it should have recognized that its claims were baseless under 101. And we think that it should have recognized that its claims were- Why? None of the other courts have gotten to that yet. They're all state, right? So it's not like in those other cases that was already pretty far along that those claims were likely ineligible. There were multiple instances prior to filing suit in the Eastern District of Texas where plaintiff should have recognized that the claim was invalid. This is a party who, this is in the record, in pre-litigation correspondence between Miller-Mindell and Guardian. Can you tell us the page? Absolutely. Appendix page 856. And this is in 2018 before the City of Oklahoma City case was ever filed. I'm sorry, eight something? 856, Your Honor. Thank you. And this is a letter in response to some pre-litigation cease and desist correspondence. Miller-Mindell's attorneys say, we recently defeated an Alice motion and are very familiar with the current case law and the rigorous tests required. At that time, the skill survey case upon which the Eastern District of Texas based its decision had already been issued and affirmed in this court. Our position is that the appellant Miller-Mindell should have recognized before it ever filed this case that it had no reasonable litigation position going forward. I know. I'm just going to say, look, it's really hard. 101 is a hot mess. There's just no other way to look at it. So it's really hard for you to come up with an amazing jurist who's done a thousand of these cases and said this one's not exceptional in the scheme of my vast experience and for you to try and get me to overturn that on a clear air standard. That was aggressive, what's that? Well, Your Honor, we needed to advocate for our client because I don't think this is the end of the road for these attorneys. I understand. And you did a very nice job. Thank you, Your Honor. Yes. Let's, I'm going to give you, because I didn't go over, I'm going to give you all five minutes of your, did you ask for three minutes? I asked for three minutes. I'll give you five minutes. I'm feeling generous. Come on up. You may not want all five minutes. You may not feel like that's a generous offer at all. But go right ahead. That's fine, Your Honor. I had previously not addressed, and I don't really intend to address the cross appeals at all. No, you get to address the cross appeals. I have a question for you on the cross appeals. Okay, yes, Your Honor. I'd like to know what the difference is between claims one and nine. I don't have them in front of me, Your Honor. Could you put them on? Certainly. Thank you. It's the type of claim, Your Honor. And as one of your prior. Could you be more specific, please? This is a computing device claim as opposed to a method claim, Your Honor. When you say this is, you're saying? Claim nine is a computing device claim, and claim one is a method claim. And otherwise, the body of the claim is identical? Otherwise, the body is very similar, yes. Okay. First off, Your Honor, the city has indicated that claim nine was at issue, or is at issue. That case is not going anywhere. It's not a state. It's just not going anywhere in the western district of Oklahoma. Let me ask you a question. I asked him by mistake. Why wasn't nine then free for detentions? I just want to get some answers here. Do you have anything on that? It's a slightly different claim because it's a computing device claim, Your Honor. And we believed, going into our own deliberations, that it was a harder claim to prove. But claim nine is not, for the same reason, in front of the western district of Oklahoma. If the court looks at the appendix at page 293, that is Milam and Dell's joint claim construction brief before the western district of Oklahoma. And in the very first paragraph, the court will see what claims we are asserting in the western district of Oklahoma. Claim one, claim five, and claim 15. 293, Your Honor. Yes. I believe there is a counterclaim in that case, Your Honor. I don't believe it's in the record. I believe there is a counterclaim in that case. But again, we're not asserting claim nine in the western district of Oklahoma. That's just simply not a true statement. The letter that my esteemed opposing counsel presented to this court, which was a pre-litigation letter, saying we diligently looked at Ellis, which is certainly true, was dealing with a completely different patent. It was dealing with the 098 patent. It wasn't dealing with the 188 patent. If you look at the letter, it literally says that right in its reference line. And one page earlier in the appendix is the letter from Guardian's attorney dealing with the 098 patent, not the 188 patent. So I don't even know why they raised that. Now, going back to something that was brought up earlier, because I wanted to address this because I think this is a unique issue. First of all, in that issue about what the court relied on and relying on that affidavit, as I indicated to the court, the court did in fact take the information from that affidavit and put it in its Ellis Step 2 analysis. And if you go on at the very end of that decision, appendix page 19, near the very bottom, it says, the generation of such lists has long been well understood, routine, and conventional, as explained above. Now, I want to make two points with that. Again, not tying it to a skilled artisan and not tying it to the time of the invention. And two, that is explained above. Now, if I read up, the only facts that the court actually has about that are the ones that come from that affidavit. Now, my esteemed opposing counsel has suggested, well, the court can use as evidence for Rule 56 the British Telecom District Court decision from a different district. However, the claims there are not the same. But more importantly, I am not aware of any decision by this court. Now, I'm aware that in Enfish, the court said you can look at comparable claims for Ellis Step 1 in cases. I believe they're talking about appellate cases, which are precedent. But more importantly, that's for Ellis Step 1. I'm unaware of any decision. Counsel, can I just ask you on this? Yes, Your Honor. When you said read above, I don't know that I'm seeing the explicit sites in the declaration. Are you just saying that there's a top five? Maybe I'm missing it. Well, Your Honor, the only thing I can see where it says as explained above, the only thing I can see where there's any facts at all on that goes all the way back to where they rely on the affidavit. I'm not seeing where they're talking about any other facts that justify this as explained above. Counsel, what about the discussion above that? There is a discussion a few sentences above the discussion about, you know, the inventionality. And it says the same is true for the limitation about the reference list. And he says, this is no different than finding an applicant's address on a map and locating the closest law enforcement agencies on that map. The claim method simply performs this step on a computer using the Internet. Stating an abstract idea while adding the words apply it is not enough for patent eligibility, which goes to the question that I asked your adversary, which was if the judge found that the thing that you're asserting to be the inventive concept is in fact abstract, without relying on any declarations or anything else, why isn't that enough to satisfy Step 2 and say, you know, in other words, if the claim is directed to the claimed inventor, the asserted inventive concept is itself an abstract idea, the Supreme Court has said that that's not enough to make a claim eligible. Your Honor, I don't read it that way. In fact, when the court says this is the same as finding on the map, that's the court saying it's not abstract. That's actually a concrete thing. It's not the way the word abstract idea is ever understood in its ordinary meaning. And more importantly, that's a factual statement. Where did the court get that fact? I've asserted to this court before, and I'll assert again, we would have declarations saying it cannot be done. There's not a map. Like if you look at the National Grid, he mentioned the World Atlas. It certainly has all 50 states, and in most of those they have all the counties. It does not call out the law enforcement agencies. Applicants can come from all over. They're just not going to come from Lubbock, Texas, to Anna, Texas. They come from Maine. They come from Alaska. They come from Minnesota. I can tell you right now, if I gave a pen and paper and an atlas to the esteemed opposing counsel, and I said the address 406 West 12 Vancouver, Washington, which is my firm, as the applicant, he would not be able to get back to you today with a list using only those three things. It was not done before, which is why law enforcement... It was not done on a computer before. It wasn't automated before. That's what you're saying, right? How quickly the computer can operate is what makes this... I actually believe it couldn't be done before, Your Honor. I don't believe any background investigator in Anna could look up and find, say, within a 75-mile radius, it's not a 15-mile radius, it's a 75-mile standard, wouldn't be able to find all the law enforcement agencies on a map because they're not on a map. What do you think the judge meant when he said stating an abstract idea while adding the words apply it is not enough for patent eligibility? Well, no, that's a true statement. If you just say... If you say an abstract idea, for example... Please don't interrupt me. Sorry, Your Honor. So what I meant by that was he says that in the context of being set to an analysis. So why isn't that saying that what you've alleged to be the inventive concept is, in fact, in itself an abstract idea? It's an idea. Do it on a computer. Hey, let's have the computer do this. Let's have it figure out a bunch of lists of references and then we're going to have the computer do it because it's so fast and it can do it so quickly, so much more quickly than an investigator. Why isn't that an abstract idea? Because, Your Honor, if it couldn't be done before and it's a direct implementation of something that has concrete real-world application, it's not an abstract idea as that term is plain and ordinary.  All right, thanks, counsel. Thank you, Your Honor. Thank both counsel. The case is taken under submission.